2006-NMCA-051

134 P.3d 122

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Wayne LOBATO, Defendant–Appellant.**

**No. 24,910.**

Court of Appeals of New Mexico.

March 15, 2006.

Certiorari Denied, No. 29,749, May 1, 2006.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant appeals his conviction for one count of criminal sexual penetration of a minor (CSPM). Defendant contends that (1) the trial court erred in admitting Defendant's videotaped confession over a defense objection that the confession was involuntary; (2) the trial court erred in declaring a mistrial, and because the mistrial ruling was erroneous, Defendant's retrial violated the six-month rule; and (3) the trial court lacked jurisdiction to try and convict Defendant because at the time of the trial, Defendant's appeal of the mistrial order was pending in this Court. We affirm.

## FACTS

{2} On the evening of September 24, 2002, the five-year-old victim reported to her mother that Defendant had molested her. The mother called the police, and at about 11:00 p.m., officers went to Defendant's house to question him. Defendant agreed to go to the police station for questioning. Defendant was given *Miranda* warnings and read and signed a waiver indicating that he understood his rights. Defendant was questioned, beginning just before midnight, for between one and two hours. Defendant eventually confessed to one incident of molestation. We provide further detail about the confession in our analysis below.

{3} Defendant was arraigned on November 12, 2002, and charged with three counts of CSPM. The trial court granted an extension of time under Rule 5–604 NMRA to August 12, 2003. Defendant's trial was set for August 7, 2003. On that day, the trial court began jury selection. In the course of questioning the potential jurors, defense counsel apparently asked a question regarding whether jurors thought a person might make a false confession if coerced. In doing so, defense counsel made reference to the

eighteen-year sentence that is possible upon a conviction of first degree CSPM. Counsel also stated that Defendant would spend "the rest of his life in prison" if convicted.

{4} Immediately after these remarks, the State moved for a mistrial on the theory that the venire was tainted because the jurors would know the possible consequences of a guilty verdict. The State argued that this knowledge would be problematic in light of the standard jury instruction that jurors are not to consider the consequences of their verdict. The trial court allowed defense counsel an opportunity to rehabilitate the venire, but ultimately declared a mistrial, finding manifest necessity because the panel was beyond rehabilitation.

{5} On September 5, 2003, Defendant filed a notice of appeal in connection with the order declaring a mistrial. On September 16, 2003, the trial court entered an order granting free process on appeal and appointing appellate counsel.

{6} In the docketing statement for that appeal, Defendant argued that the mistrial should not have been granted due to the lack of manifest necessity. Defendant's apparent theory was as follows: in the absence of a mistrial, the six-month rule would have run on August 12, 2003; the mistrial ruling was error; therefore, the six-month rule kept running despite the mistrial, and any subsequent prosecution would be untimely.

{7} On December 4, 2003, this Court filed a notice of proposed summary disposition. We proposed to affirm on the ground that the trial court had not abused its discretion in declaring the mistrial. Rather than responding to the notice, Defendant filed a motion to withdraw the appeal. On February 5, 2004, we granted Defendant's motion, ordering mandate to issue immediately. The mandate was issued on February 20 and filed in the district court on February 23.

{8} In the meantime, the trial court proceeded with Defendant's trial. There were at least four pretrial conferences and motion hearings in late 2003 and early 2004. The trial was held on February 18, 2004. At trial, the victim and her mother testified, and the videotaped confession was played for the jury. Defendant was convicted of one of the three counts of CSPM and sentenced to eighteen years.

## DISCUSSION

### 1. Defendant's Confession Was Voluntary

{9} Defendant first argues that the trial court violated his due process rights by admitting his videotaped confession because the confession was involuntary. A confession is involuntary only if official coercion has occurred. *State v. Munoz*, 1998–NMSC–048, ¶ 21, 126 N.M. 535, 972 P.2d 847. Official coercion occurs when "a defendant's will has been overborne and his capacity for self-determination [has been] critically impaired." *Id.* ¶ 20 (internal quotation marks and citation omitted). If, however, the confession is "the product of an essentially free and unconstrained choice by its maker," it may be used against the defendant without offending due process. *Id.* ¶ 21 (internal quotation marks and citation omitted). On appeal, we review the totality of the circumstances to determine as a threshold matter of law whether the State has proved by a preponderance of the evidence that Defendant's confession was voluntary. *Id.* ¶ 23.

{10} Defendant argues that the following facts show involuntariness: (1) the questioning occurred late at night and Defendant was tired; (2) the questioning officer repeatedly asserted that the State would have a strong case against Defendant based on physical evidence, but no physical evidence was presented at trial; and (3) the officer repeatedly assured Defendant that if he confessed, he would get treatment and a short prison term, but if he refused to confess, he would get an eighteen-year sentence. We address these issues in order, relying, as do the parties, on the contents of the videotaped confession.

{11} Defendant's first argument is that his fatigue at the time of the interview contributed to the involuntariness of his confession. Defendant notes that it was late at night, that he had gotten little sleep the night before, and that he had worked a full day. As stated, the test for voluntariness is whether official coercion occurred. While a finding that officers took advantage of a defendant's fatigue or weakened mental state

might be relevant, the fact that a defendant was tired does not in itself resolve the issue of whether a confession was involuntary. *See People v. Valdez*, 969 P.2d 208, 213 (Colo. 1998) (en banc) ("Absent evidence that the officers deprived [the defendant] of food and rest as a means of physical punishment, the fact that [the defendant] happened to be hungry and tired does not support a conclusion that his statements were involuntary."); *Commonwealth v. Fernette*, 398 Mass. 658, 500 N.E.2d 1290, 1294 (1986) (upholding trial court's finding of voluntariness where "[t]he judge found that even if the defendant were tired and hungry ... that did not necessarily make the statement involuntary," and where the defendant's manner of speech and responses to questions on tape of confession indicated voluntariness); *United States v. DiLorenzo*, 1995 WL 366377, at *8 (S.D.N.Y. June 19, 1995) (unpublished) ("[A] claim that a defendant was exhausted or suffering from the effects of alcohol is not, in the absence of coercive law enforcement activity, sufficient to characterize his confession as involuntary.").

{12} Defendant does not argue that the interviewing officer took advantage of his fatigue. Nor does he argue that he was not able to understand the officer's questions or think rationally due to his fatigue. Our review of the confession indicates that while Defendant did tell the officer that he was tired on several occasions, at no point did he ask the officer to terminate the interview or otherwise indicate that he was concerned about proceeding due to fatigue. Moreover, Defendant's demeanor indicates that he was not too tired to proceed. At all times, he appears alert and responsive to the officer's questions. Under these circumstances, we hold that Defendant's fatigue does not contribute to a finding of involuntariness.

{13} Defendant next argues that the interviewing officer misled Defendant regarding the physical evidence in the case. His brief states, "Throughout the interview, the interviewing officer asserted that the state had a strong case against him—based on the physical evidence." We first note that while such misrepresentations, if supported by the record, are relevant to the voluntari-

ness inquiry, they do not necessarily invalidate a confession. *See, e.g., Frazier v. Cupp*, 394 U.S. 731, 737, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (noting that while it was relevant that police had falsely told the defendant that co-conspirator had already confessed, such circumstances were "insufficient ... to make this otherwise voluntary confession inadmissible"); *Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir.1992) (explaining why official deceit about the strength of the case against a defendant does not necessarily rise to the level of official coercion).

{14} More importantly, the record does not support Defendant's contentions. Defendant does not point to any specific instances during the interview where the officer misrepresented the evidence. We have reviewed the videotape, and we note only the following four instances where the officer referred to the evidence. First, near the beginning of the interview, the officer stated,

> I have a pretty good case against you, okay? Right now in the other room here just across the hallway there's a rack in there, and it's a stainless steel rack and it's where we put items of clothing that are involved in circumstances like this, okay? And it's my opinion that I'm going to find saliva from you on that clothing.

Second, after Defendant had denied any inappropriate behavior, the officer asked, "Why then would I be in possession of panties belonging to [the victim] that I think I'm gonna find your DNA on?" Third, the officer stated that if Defendant was not going to tell the truth and admit what he had done, then he "shouldn't have given [the victim] her panties back." Finally, the officer asked the following question: "What's gonna happen when they pull your DNA from your saliva off of the inside of her panties?" He then explained how saliva can mix with bodily fluids from the victim and would be detectable on clothing.

{15} We disagree with Defendant that these comments constitute police deception about the strength of the physical evidence. The first time the officer mentioned the physical evidence, he stated only that it was his "opinion" that the evidence would inculpate Defendant. None of the officer's refer-

ences constitute affirmative statements that inculpating evidence had been found. Rather, all of the statements clearly indicate that scientific testing had not yet been performed on the clothing. Under these circumstances, we cannot say that the officer made untruthful statements about the physical evidence that would contribute to a finding that the confession was involuntary.

{16} Finally, Defendant argues that his confession was involuntary because he was repeatedly promised treatment and a short sentence if he confessed and a lengthy sentence if he did not. Early in the interview, the officer read Defendant the criminal sexual penetration (CSP) statute, *see* NMSA 1978, § 30–9–11 (2003), and the criminal sexual contact of a minor (CSCM) statute, *see* NMSA 1978, § 30–9–13 (2003). The officer then pointed out that CSP, when committed on a child under thirteen, is a first degree felony that can carry a prison sentence of eighteen years. *See* NMSA 1978, § 31–18–15 (2005) (providing a basic sentence of eighteen years for a first degree felony). The officer also pointed out that CSCM carries a mandatory minimum of three years' imprisonment. *See* § 30–9–13(B).

{17} Defendant argues that the officer implied that Defendant would get the lesser of these two sentences if he confessed. However, the statements to which Defendant refers mention either a lengthy prison sentence or treatment, not a lengthy sentence or a short sentence. We reproduce two of the statements by way of example.

> And then all of this story about "I didn't do anything" … makes you look like a person who is not remorseful. It makes you look like a predator.… You're making a mistake. I think you need help. If you don't see that, tell me. Say, "Hey I think what I'm doing is okay," and then this discussion is over and I'll go about my business of making sure that you spend the next eighteen years in prison. I assure you that that's what I'll do, because that's what's best for everybody involved.

Then, the officer indicated that if Defendant confessed, he would get treatment.

> If you're somebody that has a problem and you want help overcoming this problem,

'cause it can be done, it can be fixed. If you're a person that wants that help, you're the only one that can tell me, "Hey, I need help[,]" and I'll get you that help. I'll make sure that you get the treatment you need so that this never happens again.

{18} After reviewing the tape in its entirety, we agree that the overarching impression left by the officer's statements was that Defendant would get treatment if he confessed. However, we disagree that the officer implied that Defendant would get treatment instead of prison time or made any inappropriate promises regarding conviction or sentencing that would render the confession involuntary.

{19} In *State v. Tindle*, 104 N.M. 195, 718 P.2d 705 (Ct.App.1986), this Court explained when a promise regarding leniency could make a confession involuntary. We began by noting that an express promise of leniency "renders a confession involuntary as a matter of law." *Id.* at 199, 718 P.2d at 709. We then held that if a promise is implied, the promise is only one factor to be considered in the totality of the circumstances analysis. *See id.*

{20} The statements made in this case are certainly not express promises of leniency. We doubt that they even rise to the level of implied promises of leniency. While the officer repeatedly stated that Defendant should confess in order to get needed treatment, Defendant has not cited, nor have we found, any point in the interview where the officer promised Defendant that he would get a lesser sentence, such as the three-year minimum sentence provided for in the CSCM statute, if he confessed. Moreover, the officer never stated that Defendant would receive treatment *instead of* prison time. In fact, at the end of the interview, Defendant acknowledged that he would be spending some time in prison. Thus, we hold that the statements regarding treatment and prison time, while marginally persuasive, do not contribute materially to a showing that Defendant's confession was involuntary. *Cf. State v. Cooper*, 1997–NMSC–058, ¶¶ 48–49, 124 N.M. 277, 949 P.2d 660 (holding confession voluntary where SWAT team offered the

**436**

defendant treatment and counseling, but offer was not contingent on confession and team was trying to diffuse potentially violent situation); *State v. Munoz*, 111 N.M. 118, 121, 802 P.2d 23, 26 (Ct.App.1990) (holding confession voluntary where officer responded to the defendant's question by stating that "in his experience, first offenders who cooperated were less likely to go to jail than other defendants").

{21} Under the totality of the circumstances analysis, we hold that the videotape shows that Defendant's confession was voluntary. Despite Defendant's fatigue and the officer's suggestion that he should confess in order to get treatment, we cannot say that Defendant's "will [was] overborne and his capacity for self-determination critically impaired." *See Munoz*, 1998–NMSC–048, ¶ 20, 126 N.M. 535, 972 P.2d 847 (internal quotation marks and citation omitted). Thus, we hold that the State proved the voluntariness of Defendant's confession by a preponderance of the evidence and the trial court did not err in admitting it.

## 2. Defendant's Trial Was Timely Under Rule 5–604 Because Even an Erroneous Mistrial Order Causes the Six–Month Rule to Begin Anew

■ {22} Defendant next argues that the trial court erred in declaring a mistrial. Consequently, Defendant argues, the six-month rule kept running despite the mistrial, and his eventual trial was untimely.

{23} Rule 5–604(B), known as the "six-month rule," dictates that a criminal trial must be commenced no more than six months after the latest of several enumerated events occurs. Subsection (B)(3) states that if a mistrial is declared, the six months begins to run on the date that the order declaring a mistrial is filed. The rule also states that if the trial has not been commenced within the relevant time limits, "the information or indictment … shall be dismissed with prejudice." Rule 5–604(F).

{24} As explained above, Defendant was initially scheduled to be tried on August 7, 2003, and, pursuant to an extension granted by the trial court, the six-month period mandated by the rule would have expired on August 12, 2003. On August 7, 2003, following jury selection but before the jury had been sworn in, the trial court found manifest necessity and declared a mistrial, due to statements made by defense counsel.

{25} Defendant acknowledges that ordinarily, the six months starts to run anew upon the filing of an order declaring mistrial. However, Defendant argues, the trial court erred in granting the mistrial, and thus the rule did not begin to run anew. If this was the case, the six-month period expired on August 12, 2003, and Defendant's subsequent retrial on February 18, 2004, was untimely. Defendant acknowledges that he filed a notice of appeal from the order granting a mistrial, and he agrees that ordinarily when an appeal is filed, Rule 5–604(B)(4) dictates that the six-month period begins to run anew when the mandate from the appellate court is filed in the district court. Defendant argues, however, that the appeal could not have "reset" the clock because the six months had already run out on August 12, 2003, before the notice of appeal was filed. We reject Defendant's arguments.

■ {26} The six-month rule is a "bright-line rule, designed to assure prompt disposition of criminal cases." *State v. Jaramillo*, 2004–NMCA–041, ¶ 1, 135 N.M. 322, 88 P.3d 264 (internal quotation marks and citation omitted). However, "the rule is to be read with common sense and not to effectuate technical dismissals." *Id.*

{27} In this case, a literal reading of the rule, a common sense interpretation of it, and policy concerns all require us to hold that the mistrial operated to restart the six-month rule, making Defendant's eventual trial timely. First, a literal reading of the rule defeats Defendant's arguments. The rule states that the six months begin to run upon "the date [a mistrial] order is filed." Rule 5–604(B)(3). The rule does not make any distinction between those orders granting mistrial that are later found to be proper and those that are not. It simply states that the order commences the six-month period. Thus, a literal interpretation of the rule supports our holding.

{28} Second, common sense dictates a holding against Defendant under these circumstances. Applying the common sense approach, past cases have held against defendants despite a delay that technically violates the rule where (1) the delay inures to the benefit of the defendant or (2) the defendant acquiesces in the delay or fails to raise the issue of the six-month rule in a timely manner. *See State v. Mendoza,* 108 N.M. 446, 449–50, 774 P.2d 440, 443–44 (1989) (holding no violation where delay was for purposes of evaluating the defendant's competency, which evaluation benefitted the defendant, also taking into account failure to raise issue for nearly six months following technical expiration of the period), *modified on other grounds as recognized in County of Los Alamos v. Beckman,* 120 N.M. 596, 904 P.2d 45 (Ct.App.1995); *State v. Sanchez,* 109 N.M. 313, 316–17, 785 P.2d 224, 227–28 (1989) (holding no violation where the defendant acquiesced in delay due to plea bargain, which delay inured to his benefit); *Jaramillo,* 2004–NMCA–041, ¶ 15, 88 P.3d 264 (holding no violation of rule where the defendant acted as though the co-defendant's appeal would apply to him and stay the rule; also noting that the defendant failed to raise the issue on at least four occasions after the rule had technically run).

{29} In this case, we acknowledge that the delay caused by the mistrial did not inure to Defendant's benefit. Defendant argued vehemently against the mistrial, and we do not see how it benefitted him. However, Defendant did acquiesce in the delay and his objection to it was untimely. The record reveals that, during the approximately six months between the time Defendant now argues the rule had run and the time he objected to the delay, Defendant participated in at least four pretrial conferences and hearings without making any objection. In fact, it appears from Defendant's briefing that he did not make any objection on Rule 5–604 grounds until the morning of his trial on February 18, 2004. *See Jaramillo,* 2004–NMCA–041, ¶ 15, 88 P.3d 264 (noting that the defendant was likely not bothered by the delay because he failed to raise the issue on at least four occasions after the rule had technically run). Moreover, not only did Defendant acquiesce

in the delay, he took affirmative action, in the form of appealing the mistrial order, that could have further delayed his trial. Under these circumstances, only a hypertechnical reading of the rule would dictate dismissal. *See Mendoza,* 108 N.M. at 447, 774 P.2d at 441 (rejecting this Court's "hypertechnical analysis" of the six-month rule). We decline to read the rule in such a way.

{30} Third, policy concerns require us to reject Defendant's arguments. Although the six-month rule is not to be used to effectuate technical dismissals, one of its benefits is that it is a bright-line rule that is easily applied. *See State v. Cardenas,* 2003–NMCA–051, ¶ 12, 133 N.M. 516, 64 P.3d 543. Were we to accept Defendant's argument, we could be required to evaluate every order declaring a mistrial to determine whether it was properly granted. If it was not, we would have to order dismissal of charges if the six-month rule had expired in the meantime. Such a scenario would be sure to cause additional delay during the appellate process and would defeat the six-month rule's bright-line nature and ease of application. For all of these reasons, we reject Defendant's argument that an improperly granted mistrial does not restart the six-month period under Rule 5–604.

## 3. The Trial Court Had Jurisdiction to Try Defendant Despite His Pending Appeal of the Mistrial Order

{31} Finally, Defendant argues that the trial court lacked jurisdiction to try him because, at the time of trial, Defendant had appealed the mistrial order, but mandate had not yet been issued by this Court. As explained above, Defendant filed a notice of appeal in connection with the order declaring a mistrial on September 5, 2003. On September 16, 2003, the trial court entered an order granting free process on appeal and appointing appellate counsel. On December 4, 2003, this Court filed a notice of proposed summary disposition. Defendant filed a motion to withdraw the appeal, and on February 5, 2003, we granted Defendant's motion, ordering mandate to issue immediately. The mandate was issued on February 20 and filed in the district court on February 23. In the

meantime, Defendant's trial was held and the jury convicted him on February 18, 2004. Although the record clearly shows that Defendant's trial was held before the mandate was formally issued by this Court or filed in the district court, we reject Defendant's arguments.

{32} Defendant argues that because the appeal of the order declaring mistrial was pending in this Court at the time of his trial, jurisdiction was vested in this Court and the district court lacked jurisdiction to try him. Defendant does not cite any cases for this proposition, citing instead an A.L.R. annotation. *See* A. Petry, Annotation, *Jurisdiction to Proceed with Trial of Criminal Case Pending Appeal from Order Overruling Demurrer, Motion to Quash, or Similar Motion for Dismissal*, 89 A.L.R.2d 1236 (1963). But that annotation, by its express terms, applies only to appeals that are properly before the appellate court. *Id.* n. 1. A number of civil cases in our state have set forth this same general rule. *See, e.g., Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992) (noting that the filing of a proper notice of appeal divests the trial court of jurisdiction and transfers jurisdiction to the appellate court), *limited on other grounds by Trujillo v. Hilton of Santa Fe*, 115 N.M. 397, 851 P.2d 1064 (1993). We assume that the rule would apply in this case. *See State v. Clemons*, 83 N.M. 674, 675, 496 P.2d 167, 168 (Ct.App.1972) (applying rule in criminal case).

{33} With a few exceptions, this Court has jurisdiction over an appeal only where there is a final judgment or where an appellant has properly filed an application for interlocutory appeal. *See generally In re Larry K.*, 1999–NMCA–078, 127 N.M. 461, 982 P.2d 1060 (setting forth this general rule and noting the few, narrow exceptions to it). Defendant has not argued that any exception to the final judgment/interlocutory appeal rule applies here. Moreover, our cases make clear that, under the New Mexico Constitution, this Court has jurisdiction only "as provided by law." *State v. Griego*, 2004–NMCA–107, ¶ 3, 136 N.M. 272, 96 P.3d 1192 (internal quotation marks and citations omitted). Thus, this Court had jurisdiction over

Defendant's prior appeal (thus presumably divesting the trial court of jurisdiction) only if (1) the order declaring mistrial can be characterized as a final judgment or (2) Defendant properly requested, and this Court properly granted, interlocutory review.

{34} Defendant implicitly acknowledges that the order declaring mistrial was not a final order. The general rule is that "an order or judgment is not considered final unless it resolves all of the factual and legal issues before the court and completely disposes of the case." *State v. Heinsen*, 2005–NMSC–035, ¶ 14, 138 N.M. 441, 121 P.3d 1040. Unlike orders that match this description, an order declaring mistrial simply terminates the trial before a verdict is reached and does not finally determine any issues in the case. This is especially true where, as here, the order expressly reserves the State's right to retry the defendant. Thus, we hold that the order declaring mistrial was not a final order that Defendant could appeal as a matter of right. *See State v. Apodaca*, 1997–NMCA–051, ¶¶ 7–17, 123 N.M. 372, 940 P.2d 478 (implying but not deciding that an order denying to dismiss a charge on double jeopardy grounds following mistrial was not a final judgment appealable of right, but deciding that the defendant nonetheless had a constitutional right to an immediate appeal); *see also Larry K.*, 1999–NMCA–078, ¶ 13, 127 N.M. 461, 982 P.2d 1060 (characterizing *Apodaca* as "permit[ting] appeal of an otherwise non-final order").

{35} Where a non-final order is improperly appealed, the trial court is not divested of jurisdiction. *In re Byrnes*, 2002–NMCA–102, ¶ 39, 132 N.M. 718, 54 P.3d 996 ("An appeal from a manifestly non-final order cannot divest a court of jurisdiction. Otherwise a litigant could temporarily deprive a court of jurisdiction at any and every critical juncture." (internal quotation marks and citations omitted)). Thus, Defendant's notice of appeal did not divest the trial court of jurisdiction under the general rule as set forth in *Kelly Inn* and *Clemons*.

{36} Because a mistrial order is not a final order, Defendant argues that we should treat

his notice of appeal and/or docketing statement in the prior appeal as an application for interlocutory review. Defendant notes that under Rule 12–203(E) NMRA, "[t]he granting of an application [for interlocutory appeal] shall automatically stay the proceedings in the district court unless otherwise ordered by the appellate court." We hold that Defendant did not file a proper application for interlocutory review and that this Court did not grant such an application. Thus, we need not address whether the "stay" mandated by Rule 12–203 would deprive the trial court of jurisdiction in the same way that we have assumed a proper appeal of a final order would under the *Kelly Inn* rule.

{37} We reject Defendant's request to treat his notice of appeal as a request for interlocutory review because we note at least two procedural requirements for interlocutory review that were not complied with in this case. First, the application must be filed in this Court, and it must be filed within ten days of the filing of the contested interlocutory order of the district court. NMSA 1978, § 39–3–3(A)(3) (1972). We note that the applicable Supreme Court rule appears to allow fifteen days in which to file an application. *See* Rule 12–203(A). However, under the circumstances of this case, the statute trumps the rule and Defendant would have been required to file his application within ten days of the order declaring mistrial. *See State v. Alvarez,* 113 N.M. 82, 85, 823 P.2d 324, 327 (Ct.App.1991) (holding that the State had to file its appeal that was not constitutionally as of right within statutorily mandated ten days because Supreme Court rule that allowed thirty days in which to appeal only applied to appeals as of right, stating that "[t]he [S]upreme [C]ourt cannot create its own appellate jurisdiction for an extra twenty days by virtue of [a rule]"). Thus, the notice of appeal in this case would have been untimely as an application for interlocutory review because the order declaring mistrial was filed on August 21, 2003, and Defendant's notice of appeal was filed on September 5, 2003, and was filed in the district court, not this Court.

{38} Second, the district court must certify the order for interlocutory review by stating that "the order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from such order or decision may materially advance the ultimate termination of the litigation." Section 39–3–3(A)(3). The order in this case contains no such language. Defendant argues that by entering an order granting free process on appeal and appointing appellate counsel, the trial court effectively certified its decision for interlocutory review. We disagree. The content required by the statute is clear. We decline to hold that all orders by the trial court that acknowledge that an appeal has been filed operate to certify an issue for interlocutory review. *See Sys. Tech., Inc. v. Hall,* 2004–NMCA–130, ¶ 10, 136 N.M. 548, 102 P.3d 107 (referring to the language of the trial court that authorizes interlocutory appeal as "required"); *Romero v. Pueblo of Sandia/Sandia Casino,* 2003–NMCA–137, ¶ 5, 134 N.M. 553, 80 P.3d 490 (referring to such language as "requisite"); *Ford v. N.M. Dep't of Pub. Safety,* 119 N.M. 405, 408, 891 P.2d 546, 549 (Ct.App.1994) (referring to such language as "required"); *see also* Comment, *New Mexico's Analogue to 28 U.S.C. § 1292(b): Interlocutory Appeals Come to the State Courts,* 2 N.M. L.Rev. 113, 116 (1972) (noting that "[f]ederal courts also have required that the certificate contain an actual statement that the question meets the criteria imposed by the statute"). We in New Mexico may in fact allow more flexibility than the federal courts, but we do require at least some statement by the trial court that it intends to certify the question.

{39} Relying on *State v. Garcia,* 91 N.M. 131, 571 P.2d 123 (Ct.App.1977), Defendant argues that by calendaring his appeal and issuing a notice of proposed summary disposition, this Court treated his notice of appeal and docketing statement as an application for interlocutory appeal. However, in *Garcia,* we denied the application. It was unclear from the opinion whether we denied it on the merits or because the appeal was not properly before us. Thus, that case is not authority for us to say that Defendant's prior, improper appeal was properly before us. *See Candelaria v. Middle Rio Grande Conservancy Dist.,* 107 N.M. 579, 581, 761 P.2d 457,

459 (Ct.App.1988) (holding that interlocutory appeals are permitted only where statutory procedures have been complied with). Thus, because Defendant's notice of appeal and docketing statement would have been untimely as applications for interlocutory review, we lacked the authority to grant interlocutory review.

{40} Finally, Defendant argues that by calendaring his appeal and filing a notice of proposed summary disposition, the Court took jurisdiction of his case, properly or not, and thus the trial court lacked jurisdiction to try him. Defendant argues that under a theory of "apparent authority," the "orderly administration of justice" required the trial court to stay its hand while this Court decided the appeal. We disagree.

{41} The orderly administration of justice would not require a trial court to delay a trial where the defendant did not even suggest to it a lack of jurisdiction and where the procedural posture at the time the trial took place was such that this Court's jurisdiction, if any, was concluded for all practical purposes. Defendant had moved to dismiss his appeal. We granted the motion and ordered that mandate be issued immediately. There was nothing further for this Court to do except formally issue the mandate. As in *Saudi v. Brieven*, 176 S.W.3d 108, 113–15, 117 (Tex. App.2004), we think that the orderly administration of justice would counsel against nullifying trial court proceedings that occurred at a time when this Court's proceedings were effectively at an end.

{42} Thus, because jurisdiction was not properly in this Court and, even if it was, this Court's jurisdiction was for all practical purposes concluded, we hold that the trial court had jurisdiction when it tried Defendant.

**CONCLUSION**

{43} We affirm.

{44} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JAMES J. WECHSLER, Judges.