This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.                                                                      **NO. 29,745**

**PAUL LANDIS JOHNSON,**

 Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

                           **MEMORANDUM OPINION**

**WECHSLER, Judge.**

 Defendant appeals from his convictions for second-degree murder, negligent

child abuse by endangerment, and tampering with evidence. In this Court's notice of proposed summary disposition, we proposed to affirm. Defendant has responded with a memorandum in opposition and a motion to amend the docketing statement to add two new issues. We have considered Defendant's arguments, and as we are not persuaded by them, we deny his motion to amend. We affirm.

**Defendant's Motion to Suppress**

In Defendant's docketing statement, he argued that the district court erred in refusing to suppress inculpatory statements Defendant made to the police after he was given his *Miranda* warnings. [DS 6] Defendant asserted that the statements should have been suppressed because they were involuntary, as Defendant was tired from staying up all night drinking and as he was distraught about the incident. [DS 3] To the degree that Defendant's memorandum in opposition seeks to make arguments about whether the district court should have suppressed the statements because Defendant invoked his right to counsel, such that the questioning should have ceased, this is a separate argument requiring a separate factual basis and a separate legal analysis. This argument was not made in the docketing statement and Defendant does not indicate that it was preserved below. Accordingly, we do not address this portion of Defendant's memorandum in opposition.

We review the voluntariness of a confession de novo. *See State v. Evans*,

2

2009-NMSC-027, ¶ 32, 146 N.M. 319, 210 P.3d 216. "A confession is involuntary only if official coercion has occurred." *State v. Lobato*, 2006-NMCA-051, ¶ 9, 139 N.M. 431, 134 P.3d 122. "Official coercion occurs when a defendant's will has been overborne and his capacity for self-determination [has been] critically impaired." *Id.* (alteration in original) (internal quotation marks and citation omitted). "[W]ithout police misconduct, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *State v. Fekete*, 120 N.M. 290, 299, 901 P.2d 708, 717 (1995) (internal quotation marks and citation omitted). Examples of official conduct that will render a defendant's statements involuntary for purposes of due process include "intimidation, coercion, deception, assurances, or other police misconduct that constitutes overreaching." *State v. Munoz*, 1998-NMSC-048, ¶ 23, 126 N.M. 535, 972 P.2d 847.

Defendant contends that his "state of emotional discord" due to his "drunken, sleepless and stress riddled" night rendered his confession involuntary. [DS 3] However, while a defendant's physical and mental state may be relevant to the question of how much weight a jury should give the defendant's statements, those factors are insufficient to demonstrate official coercion. *See Lobato*, 2006-NMCA-051, ¶ 11 (noting that evidence that a defendant was tired, hungry, or suffering from the effects of alcohol does not demonstrate that his statement was

3

involuntary in the absence of coercive law enforcement activity); *see also Fekete*, 120 N.M. at 299, 901 P.2d at 717 (stating that "a defendant's mental state at the time he or she makes incriminating statements to the police is only one factor for the trial court to consider when determining whether such statements were voluntary" and holding that the fact the defendant was suffering from a mental illness when he was questioned did not render his statements involuntary since the police "did not threaten or coerce" the defendant or "promise him any special treatment if he talked to them"). Where Defendant cites no authority in support of his claim that police questioning of someone who did a lot of drinking the night before and is tired, emotional, and stressed constitutes a due process violation, we will assume that no such authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Accordingly, we hold that the district court did not err in concluding that Defendant's statements were voluntary and that no police coercion deprived him of due process.

**Sufficiency of the Evidence**

Defendant asserts that there was insufficient evidence to support his conviction for negligent child abuse by endangerment. [DS 6-7] "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711,

4

998 P.2d 176.

The jury was instructed that for it to find Defendant guilty of negligent child abuse by endangerment, it must determine that 1) Defendant caused the child to be placed in a situation that endangered her life or health, and 2) Defendant acted with reckless disregard and without justification, among other elements. [RP 241] The instruction provided that the jury must find that Defendant "knew or should have known" that his conduct "created a substantial and foreseeable risk," that he "disregarded that risk," and that he was "wholly indifferent to the consequences of the conduct." [RP 241]

"[P]roof of child endangerment is sufficient for a conviction if a defendant places a child within the zone of danger and physically close to an inherently dangerous situation." *State v. Trossman*, 2009-NMSC-034, ¶ 20, 146 N.M. 462, 212 P.3d 350. In this case, there was evidence that Defendant's wife and daughter were sitting in the car while Defendant got out, had an argument with the victim on the street, and shot the victim in the head. [DS 2] At the time Defendant confronted the victim, Defendant believed the victim to be armed with either a gun or a knife and believed that the victim might want to shoot or stab Defendant. [DS 2]

In a previous case reviewing the sufficiency of the evidence of child abuse by endangerment, the New Mexico Supreme Court held that a defendant's conduct

created a substantial and foreseeable risk of harm sufficient to support a conviction of child abuse when the defendant pointed a gun at someone who was near a child. *See State v. McGruder*, 1997-NMSC-023, ¶¶ 37-38, 123 N.M. 302, 940 P.2d 150. In contrast, this Court has held that when a defendant tried to kill a child's mother while the child was in a different part of the house, there was not a substantial and foreseeable risk of harm to the child to support a conviction for child abuse. *See State v. Trujillo*, 2002-NMCA-100, ¶¶ 19-20, 132 N.M. 649, 53 P.3d 909. These two cases reflect the general rule that the child must actually be in the zone of danger in order to support a conviction for child abuse.

In Defendant's case, it appears that there was sufficient evidence from which a jury could conclude that the child and the vehicle were in close proximity to an altercation that Defendant expected to lead to gunfire, either from the victim, from Defendant, or both, and which did in fact lead to gunfire from Defendant. Although there is no evidence that, as in *McGruder*, Defendant shot in the direction of the child, we nevertheless conclude that an altercation involving gunfire is sufficiently dangerous and unpredictable that Defendant placed his child in the zone of danger, thereby exposing her to a substantial and foreseeable risk of harm. Defendant's memorandum in opposition suggests that the child was not in the zone of danger because, in a conversation with Defendant, appellate counsel was informed that the

6

shooting occurred at least fifty yards from the car. [MIO 4] However, Defendant also notes that trial counsel indicated to appellate counsel that the shooting occurred only a few feet from the car. [MIO 4] As neither of these post-trial representations is framed in terms of what evidence was or was not introduced at trial, we do not rely on them in reviewing the sufficiency of the evidence (although we recognize that trial counsel's representation, along with the fact that trial counsel chose not to raise the issue of the car's proximity to the shooting in the docketing statement, do reflect trial counsel's determination that this is not a viable issue based on the evidence introduced at trial). And as Defendant has not described the evidence actually introduced at trial in a manner that would undermine the proposed conclusion in our notice that there was substantial evidence from which a reasonable factfinder could determine that Defendant's child was close enough to the altercation to be in danger, we adhere to that conclusion. *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

We recognize that this Court has held that there was no substantial and foreseeable risk to a child when a defendant left his child in a car with the child's mother, ten to fifteen feet from the defendant's drug transaction. *See State v. Roybal*,

115 N.M. 27, 34, 846 P.2d 333, 340 (Ct. App. 1992). However, the nature of the interaction in that case was different, as there was no evidence in *Roybal* that the defendant had any reason to believe that it would become violent, and in fact, it did not. *See id.* Here, in contrast, there was evidence from which a jury could conclude that Defendant knew or should have known that there would be gunfire as a result of his interaction with the victim and that the child was dangerously close to the gunfire. Accordingly, we propose to affirm Defendant's conviction for negligent child abuse by endangerment.

**The Motion to Amend the Docketing Statement**

Defendant seeks to amend the docketing statement to add two additional issues pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985). He requests that the Court address his arguments that his convictions should be reversed because his counsel had a conflict of interest and because prosecutorial misconduct deprived him of a fair trial. Because we conclude that these issues as presented in Defendant's motion are not sufficiently viable to warrant an amendment to the docketing statement, we deny the motion. *See State v. Moore*, 109 N.M. 119, 129, 782 P.2d 91, 101 (Ct. App. 1989) (indicating that issues must be viable in order to justify an amendment to the docketing statement), *superceded by rule on other grounds as recognized in State v. Salgado*, 112 N.M. 537,

817 P.2d 730 (Ct. App. 1991).

Therefore, for the reasons stated in this opinion and the notice of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**CELIA FOY CASTILLO, Judge**