This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: November 20, 2025**

**No. S-1-SC-40399**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DEVIN M. MUNFORD,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joseph A. Montano, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Appellate Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

## DECISION

**VIGIL, Justice.**

**{1}** Defendant Devon Munford was found guilty by a jury of first-degree willful and deliberate murder, NMSA 1978, § 30-2-1(A)(1) (1994); aggravated assault with a deadly weapon, NMSA 1978, § 30-3-2(A) (1963); armed robbery, NMSA 1978, § 30-16-2 (1973); conspiracy to commit armed robbery, NMSA 1978, § 30-28-2 (1979); tampering

with evidence, NMSA 1978, § 30-22-5 (2003); and criminal damage to property, NMSA 1978, § 30-15-1 (1963). Defendant received a life sentence plus twenty-five years, and now appeals directly to this Court pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA.

**{2}** Defendant raises two specific issues: (1) whether the district court erred by failing to suppress Defendant's statements to law enforcement on the basis that they were involuntary, and (2) whether sufficient evidence supports the special verdict for tampering with evidence related to the first-degree murder charge.[1] We conclude that Defendant's statements to law enforcement were voluntary and Defendant's tampering with evidence charge is supported by sufficient evidence. We affirm the judgment and sentence, and exercise our discretion to decide this appeal by nonprecedential decision. *See* Rule 12-405(B)(1) NMRA.

## I. FACTUAL BACKGROUND

**{3}** In light of the limited nature of Defendant's challenge to his convictions, we provide the following brief summary of the trial evidence supporting the convictions. Defendant and Devon Heyborne met while they were both being held at the Bernalillo County jail, and they would go to the gym and make rap videos together. When Defendant and a friend broke into Heyborne's apartment and stole a rifle, Heyborne reported Defendant to the police. Then, on April 23, 2021, when Heyborne opened his apartment door to Defendant's knock, Defendant shot Heyborne with a shotgun in the chest and wrist, killing him. While investigating the homicide scene, police recovered spent shotgun shells from the area outside of the apartment.

**{4}** About forty minutes after the shooting, Defendant posted a video on Snapchat rapping the song "Back in Blood" in which he changed part of the lyrics to refer to shooting someone with a shotgun, and tagged the video "for real, I dropped my first body tonight. Gauged him in the face." Defendant also messaged a friend saying, "Mando, I killed Devon" and posted "somebody got killed by my shotgun tonight" on Snapchat.

**{5}** A few minutes after posting the video, Defendant was with his mother at an apartment complex parked next to a car owned by Susan Sloan. Sloan went to her car to retrieve her cell phone, and Defendant asked her what she was doing. Defendant's mother said, "let's go," and Defendant answered, "no, I'm going to kill this bitch." Defendant then got out of his car with a shotgun and shot over Sloan's head. Sloan went into her car to hide, and Defendant fired a second shot before getting back in his car and leaving.

---

[1]Without elaboration, Defendant also states in his brief that the district court also allowed the State to present evidence of "Snapchat messages that the State attributed to [Defendant] without adequate foundation." Defendant merely makes this assertion without developing an argument to support it, and therefore we do not address it. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (explaining that the appellate court does not review unclear or undeveloped arguments).

**{6}**     Next, on April 25, 2021, Defendant and two other men discussed the possibility of "hitting a lick," or committing a robbery, after they had made the arrangements. Later that day, while he was armed with a shotgun, Defendant and the two other men robbed a Seven-Eleven convenience store. They took money from the cash registers, demanded money from the employees and customers, and took bottles of liquor. Defendant and his cohorts fled on foot when Albuquerque police entered the store's parking lot. Defendant threw the shotgun and bottles in a dumpster in the store parking lot and ran down the street for about a block and a half. The police caught Defendant and arrested him. Shotgun shells were found in Defendant's pocket and the police retrieved the shotgun from the dumpster. After the police presented Defendant to the store employees for identification as one of the robbers, he was taken to the police station. In light of this brief background, we now turn to Defendant's arguments on appeal.

## II.     DISCUSSION

### A.     Motion to Suppress

**{7}**     Defendant filed a motion to suppress statements he made in an interview to Officer Zachary Formento related to the Seven-Eleven robbery and statements he subsequently made to Detective Ana Bruciaga related to Heyborne's murder. Whether Defendant waived his *Miranda* rights was not at issue in the district court, nor is it an issue on appeal. The basis for the motion was that the statements were not voluntary because Defendant was under the influence of the narcotic Xanax when he was interviewed. After the State responded, an evidentiary hearing was held. At the evidentiary hearing on the motion, the State presented three witnesses: Timothy McCarson, a drug recognition expert; Officer Formento, together with the body camera video of him interviewing Defendant; and Detective Bruciaga, and the video of her interview of Defendant.

**{8}**     McCarson testified that "Xanax is a central nervous system depressant, basically a sedative," and that he "has interacted numerous times with people who claimed to have taken it." A person abusing Xanax to get intoxicated or "high" would appear to be drunk—exhibiting poor coordination, slurred and garbled speech, and having difficulty understanding what people are saying, much like someone intoxicated on alcohol. On the other hand, someone using Xanax therapeutically, on normal doses, would behave normally. Based on his review of the videos of Defendant's interviews, Defendant did not show signs of being "high" on Xanax. Defendant appeared to be "very articulate" and coherent and to understand what was occurring.

**{9}**     Officer Formento testified that he interacted with and monitored Defendant for four to five hours, which included his arrest, the time spent interviewing him, waiting with him at the prisoner transport center, and then waiting for Defendant to be booked. Sometime during this interaction, Defendant claimed he had taken about six Xanax pills throughout the day. However, Defendant had no difficulty giving responsive answers to Officer Formento's questions, and he did not exhibit any behaviors such as being

sluggish or slow to answer questions indicating he was under the influence of anything during that entire time.

**{10}** Detective Bruciaga likewise testified that she did not observe any indications that Defendant was under the influence of Xanax in any way. In fact, Defendant told Detective Bruciaga that he knew she was there to talk to him about the murder, and he was coherent, appeared to understand her questions, and provided relevant answers to her questions. At one point during the interview, Defendant said something about 90 Xanax, and that he was "high." Detective Bruciaga jokingly said that if he had taken that many, he would not "be here" meaning he would be dead. Defendant then clarified that he had been holding them for sale, and did not ingest that many. However, Defendant never said when he ingested Xanax.

**{11}** The district court denied the motion to suppress in a detailed written order. The district court found that at the time of his arrest through the time that he was interviewed by Officer Formento and Detective Bruciaga, Defendant exhibited no symptoms whatsoever consistent with being under the influence of Xanax. "Specifically" the district court found, "Defendant was coherent, articulate and exhibited complex thought processes." Further, the district court determined, "Defendant was walking, talking, coherent and did not exhibit slurred speech or any symptomology of impairment." In addition, the district court found that Defendant exhibited knowledge and understanding of court procedure; in particular, Defendant requested Officer Formento call his pre-trial officer and asked Detective Bruciaga about whether he would be given bond for release. The district court ultimately concluded that Defendant knowingly and voluntarily waived his *Miranda* rights, and because there was no police overreaching or other coercion by law enforcement in obtaining Defendant's statements, the statements were voluntarily given.

**{12}** This Court reviews the voluntariness of a confession de novo. *State v. Evans*, 2009-NMSC-027, ¶ 32, 146 N.M. 319, 210 P.3d 216. In so doing, the Court "examine[s] the entire record and the circumstances under which the confession was made, and . . . make[s] an independent determination of the ultimate question of voluntariness." *Aguilar v. State*, 1988-NMSC-004, ¶ 7, 106 N.M. 798, 751 P.2d 178 (emphasis omitted). In other words, to make its determination, the Court "examine[s] the 'totality of the circumstances' surrounding the confession . . . ." *State v. Fekete*, 1995-NMSC-049, ¶ 34, 120 N.M. 290, 901 P.2d 708 (citation omitted). Presented with a claim that a confession is involuntary, the State "has the burden of proving the voluntariness of a defendant's statement by a preponderance of the evidence." *Id.*

**{13}** Relevant evidence of voluntariness includes evidence of the confessor's personal characteristics. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 23, 150 N.M. 232, 258 P.3d 1024 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). As applicable here, relevant characteristics include whether the confessor was impaired or suffering from mental illness. *Id.*; *State v. Montano*, 2019-NMCA-019, ¶ 17, 458 P.3d 512. However, the confessor's troubled state of mind or impairment levels are independently "insufficient to render a confession involuntary without accompanying police misconduct or overreaching." *Montano*, 2019-NMCA-019, ¶ 17. The State must have seized upon

and exploited the confessor's vulnerable characteristics or conditions to render the confession involuntary. *See Evans*, 2009-NMSC-027, ¶ 38. Moreover, "Case law makes it clear that when interrogators are unaware of, and therefore cannot exploit, the mental or emotional vulnerabilities of a suspect, the crucial link between the confession and official action is missing." *Id.* We can only conclude that a confession is involuntary when "official coercion" occurs such that "a defendant's will has been overborne and his capacity for self-determination has been critically impaired." *Id.* ¶ 33 (brackets, internal quotation marks, and citation omitted).

**{14}** The totality of the foregoing circumstances here do not support a determination of involuntariness. Initially, Defendant fails to produce any evidence of his impairment aside from his own testimony. *See Evans*, 2009-NMSC-027, ¶ 37 (rejecting an involuntary confession claim when "there is little in the record, apart from [the d]efendant's own words" suggesting the defendant was impaired). Furthermore, the evidence unambiguously demonstrates that Defendant did not exhibit signs of drug impairment at any time during the interviews. Defendant was walking, talking, and coherent. The State's drug recognition expert opined that Defendant did not exhibit symptoms consistent with someone being high on Xanax. Specifically, Defendant was coherent, articulate, and exhibited complex thought processes. Additionally, Defendant fabricated facts. A defendant under the influence of narcotics is still capable of making a voluntary confession. *See State v. Lobato*, 2006-NMCA-051, ¶ 11, 139 N.M. 431, 134 P.3d 122 ("A claim that a defendant was . . . suffering from the effects of alcohol is not, in the absence of coercive law enforcement activity, sufficient to characterize his confession as involuntary." (brackets, internal quotation marks, and citation omitted)).

**{15}** Moreover, there was no overreaching or coercion by law enforcement in obtaining Defendant's statements. There is no evidence whatsoever that Officer Formento or Detective Bruciaga did anything to overreach, or coerce Defendant into giving his statements.

**{16}** Our de novo review of the record leads us to conclude that the evidence fails to demonstrate that Defendant was under the influence of Xanax when he was interviewed by Officer Formento and later by Detective Bruciaga. Even if Defendant was under the influence of Xanax to any degree, the officers did nothing to seize upon or exploit Defendant's condition, thereby rendering his statements involuntary. We therefore affirm the district order denying Defendant's motion to suppress.

**B.      Sufficiency of the evidence related to tampering with evidence on the murder and aggravated assault charges**

**{17}** Defendant argues that the evidence is insufficient to support the jury's finding that the shotgun Defendant threw into the dumpster, which he used in the armed robbery of the Seven-Eleven, is the same gun used in the murder of Heyborne. He therefore contends that the evidence fails to support the jury's finding that Defendant tampered with evidence as related to murder and aggravated assault. The issue is raised by Defendant pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1. The district

court addressed this issue prior to sentencing and determined that the tampering with evidence charge "goes to the heart of the armed robbery case where he's ditching the firearm . . ." and correctly applied the tampering charge to the armed robbery charge. We therefore reject this argument.

**{18}**    The test for sufficiency of the evidence "is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). In addition, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In our determination of the sufficiency of the evidence, we are required to ensure that "a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Duran*, 2006-NMSC-035, ¶ 5 (internal quotation marks and citation omitted). Under our standard of review, the evidence clearly supports a finding that Defendant committed tampering with evidence as it relates to the armed robbery of the Seven-Eleven. Video surveillance admitted at Defendant's trial showed Defendant throwing the shotgun used in the armed robbery into the dumpster in the store parking lot. Police retrieved, photographed and swabbed the shotgun.

**{19}**    Even if the evidence fails to show that the shotgun thrown into the dumpster outside the Seven-Eleven is the same shotgun used in Heyborne's murder, there is nevertheless sufficient evidence to prove tampering with evidence. Defendant was correctly convicted and sentenced for one count of tampering with evidence as a third-degree felony for the armed robbery of the Seven-Eleven.

**{20}**    In separate special verdicts, the jury unanimously found beyond a reasonable doubt that Defendant committed tampering with evidence related to the first-degree murder of Heyborne, and tampering with evidence related to the armed robbery of the Seven-Eleven. Because a person is guilty of a third-degree felony when the highest crime for which tampering with evidence is committed is a capital or first-degree felony or a second-degree felony, Section 30-22-5(B)(1), Defendant committed a third-degree felony for tampering with evidence related to either the murder or the armed robbery. First-degree murder is a capital felony, Section 30-2-1(A)(1); and armed robbery is (for the first offense) a second-degree felony, Section 30-16-2. Furthermore, although the jury found that tampering with evidence was committed as related to both crimes, it only found Defendant guilty of the one count in the indictment charging tampering with evidence, and Defendant received a single sentence of three years for committing a single offense of tampering with evidence. This is the correct sentence for a third-degree felony. NMSA 1978, Section 31-18-15(A) (2025).

**{21}**    We reject Defendant's argument under this point because the evidence supports Defendant's conviction for tampering with evidence.

**III.    CONCLUSION**

**{22}**    We affirm the judgment and sentence.

**{23}    IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**