# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  October 16, 2014

**NO. 32,460**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**CHRIS TALAYUMPTEWA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Louis E. DePauli Jr., District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellee

# OPINION

**VIGIL, Judge.**

{1}     The State appeals from an order of the district court suppressing statements made by Defendant during police questioning. The district court suppressed Defendant's statements on the basis that they were the product of coercive police conduct in the form of promises of leniency and were involuntary under the totality of the circumstances. We affirm the district court.

## BACKGROUND

{2}     The alleged victim gave a SAFE house interview in which she accused Defendant of sexual assault. Officers from the McKinley County Sheriff's Office left messages at Defendant's home that they wanted to speak with him, and Defendant came to the Sheriff's Office voluntarily, and agreed to speak with police. Defendant was questioned there by two police officers, Anthony Ashley and Owen Pena, for around ninety minutes. During the course of the interview, Defendant made a written statement, in the form of an apology letter, and oral statements. Defendant moved to suppress the statements arguing that they were involuntary because police did not give him *Miranda* warnings prior to questioning him and because they were induced by promises of leniency by the police.

{3} After an evidentiary hearing, at which both officers testified, and review of the transcript of the interview, the district court ordered Defendant's statements suppressed. In its written order, the district court first rejected Defendant's *Miranda* argument, finding that he was not in custody during the interview, and *Miranda* therefore did not apply. The district court specifically found that Defendant was not in custody because he was informed at the outset of the interview that he was free to leave, the officers told him that he would not be arrested that day, and the officers did not threaten him. However, the court found that his statements were nonetheless involuntary because of police overreaching in the form of implied promises of leniency. The district court found that immediately at the start of questioning, the officers began making implied promises of leniency, which continued throughout the interview. The district court found that the multitude of the implied promises of leniency outweighed other factors that might indicate the statements were voluntary. The State appeals. Additional facts are included in the discussion below.

**ANALYSIS**

{4} The State challenges both the district court's determination that officers made implied promises of leniency and its ruling that the implied promises of leniency outweighed other factors that might indicate that the statements were voluntary. "We review de novo the voluntariness of confessions." *State v. Evans*, 2009-NMSC-027,

¶ 32, 146 N.M. 319, 210 P.3d 216; *see also State v. Leeson*, 2011-NMCA-068, ¶ 21, 149 N.M. 823, 255 P.3d 401 (same). "Voluntariness means freedom from official coercion." *State v. Sanders*, 2000-NMSC-032, ¶ 6, 129 N.M. 728, 13 P.3d 460 (internal quotation marks and citations omitted). Promises of leniency on the part of police can be coercive and may render a subsequent statement involuntary. *See Evans*, 2009-NMSC-027, ¶ 42 (noting that threats and promises may rise to the level of coercive behavior by the police); *see also State v. Tindle*, 1986-NMCA-035, ¶ 25, 104 N.M. 195, 718 P.2d 705 (stating that an express promise of leniency "renders a confession involuntary as a matter of law"); *State v. Gutierrez*, 2011-NMSC-024, ¶ 25, 150 N.M. 232, 258 P.3d 1024 (stating that "unlike an express promise of leniency, which can render a confession inadmissible as a matter of law, evidence of an implied promise is only a factor in the totality of the circumstances that courts consider in determining whether a confession is voluntary").

**Implied Promises of Leniency**

{5}     We first address the State's argument that the district court erred in determining that police made implied promises of leniency during the interview. "The test in such a case is 'whether the accused could reasonably have inferred a promise going to the punishment for the crime to be confessed.'" *State v. Munoz*, 1998-NMSC-048, ¶ 34, 126 N.M. 535, 972 P.2d 847 (quoting *State v. Wickman*, 1935-NMSC-035, ¶ 36, 39

3

N.M. 198, 43 P.2d 933).  Our review of the transcript supports the district court's determination that the officers made numerous implied promises of leniency to Defendant throughout the interview in exchange for statements that accorded with the alleged victim's version of events.

{6}     Defendant responded to the officers' questions by saying that he could not remember what happened because he was intoxicated when the alleged incidents occurred.  In response, the officers repeatedly told Defendant they would be meeting with the district attorney, that his claims not to remember were legally invalid, and that they had the ability to influence the district attorney with respect to the level of charges Defendant faced.  Among other similar statements, Officer Pena told Defendant:

> You're giving us nothing and that's what we're gonna [sic] go to the D.A.s with . . . is that he gave us nothing . . . he tried to use the old . . . I don't remember because I was intoxicated defense . . . .  And that's what we're gonna tell the D.A. . . . .  He came in and he gave us a convenient excuse . . . .  Oh I was drunk . . . .  Oh I don't remember . . . . It coulda [sic] happened, but I don't know if it did . . . or anything like that. . . .  So if you do remember what happened, just come clean with us . . . .  We're trying to help you here . . . .  Okay, but we can only help you so much. . . .  Okay, I can't go to the D.A.s and be like hey let's . . . you know let's cut this guy a break or . . . or let's . . . you know let's do this or . . . let's uh . . . you know let's think about it second [sic] if you won't tell us what happened cuz [sic] I can't go to the D.A. with that . . . .  Okay, I can't . . . .  The D.A. ain't gonna [sic] buy that either.

4

{7}     The officers also began to inform Defendant that he was facing multiple felony charges and that they could help him, but only if he remembered. Officer Pena told Defendant:

> Okay . . . . I tried to help you here, I tried to give you a life line, I tried to help, I tried to give you that life preserver for you to help yourself, you don't wanna [sic] take it that's fine. . . . I'll . . .we . . . Investigator Ashley will go forward to the . . . to the D.A.s with what we have based off what her . . . what she's saying 'cuz [sic] you don't want to recant anything she's saying by just saying I was intoxicated, I don't remember. . . that's fine, if that's . . . that's the road you wanna [sic] go down . . . that's fine, okay. . . when the warrant comes and when we're putting you in jail . . . for multiple felonies okay . . . don't say oh wait a minute, I wanna [sic] talk now, because that's gonna [sic] be gone, once you get cuffed and put in jail.

In the specific exchange cited by the district court, the officers also discussed the range of prison terms for different degrees of felonies in response to Defendant's question about how much jail time he was facing. The following discussion then occurred:

> Defendant:     Is there a way I can like . . . . The only way I can help myself is to remember, right?
>
> Officer Pena:     That would be a big help.
>
> Defendant:     And then if I remember and that is what happened I'm still looking at those right?
>
> Officer Pena:     No[t] necessarily, uh . . . it's still . . . we still have to . . . it's not like we sit here and we're like okay, we're gonna [sic] charge him for this okay . . . we

5

need to get everything done . . . we still got some interviews to do and stuff like that, we're gonna [sic] do . . . we're gonna [sic] interview everybody then we take our whole case and we give it to the D.A.s and the D.A.s is the one who say . . . this and that . . . okay?

Officer Ashley: [S]eriousness of the crime is way up here, we can help eventually bring it back down to maybe almost down to nothing. . .

Officer Pena: That also depends on . . . us being able to go to the D.A.s . . . being able to say to the judge you know, he was very . . . sorry it was an accident, it was [a] stupid mistake that he did while he was intoxicated . . . he came in he was honest about it, he was up front about it . . . he did remember finally, he came back in and said hey this is what I remembered.

{8} These statements and the others like them constitute implied promises of leniency because their import was that Defendant would be arrested on serious felony charges if he continued to claim a lack of memory, but that if he made certain admissions, officers would intercede with the district attorney on his behalf, and that they had the ability to have charges reduced or not brought at all. *See Munoz*, 1998-NMSC-048, ¶ 34 (stating that an implied promise of leniency occurs when the accused could reasonably have inferred a promise going to the punishment for the crime to be confessed); *cf. State v. Lobato*, 2006-NMCA-051, ¶ 18, 139 N.M. 431, 134 P.3d 122 (finding no implied promise of leniency where the officer told the

6

defendant he would get treatment if he confessed, but did not tell the defendant he would receive treatment instead of prison time).

{9} The State characterizes the officers as merely suggesting to Defendant that his claims not to remember were not believable and that cooperation would be more helpful to him than denial. *See Evans*, 2009-NMSC-027, ¶ 43 ("[T]hreats that merely highlight potential real consequences, or are 'adjurations to tell the truth,' are not characterized as impermissibly coercive."). The State also argues that Defendant could not have inferred a promise of leniency because the officers told him that any charging decision was ultimately up to the district attorney. Defendant counters that Officer Ashley's statement that the charges could be reduced "maybe down to almost nothing" rose to the level of an express promise of leniency, and the statements are therefore inadmissible as a matter of law. *See Lobato*, 2006-NMCA-051, ¶ 19 (stating that an express promise of leniency will render a confession inadmissible as a matter of law).

{10} We cannot agree with Defendant's argument that Officer Ashley's statement rose to the level of an express promise because it was not an unequivocal guarantee that Defendant would receive leniency if he gave a statement. *See State v. Munoz*, 1990-NMCA-109, ¶ 13, 111 N.M. 118, 802 P.2d 23 (stating that a promise of leniency was implied where the officer merely speculated about what might happen

7

if the defendant was cooperative). However, we also disagree with the State's assertion that the officers only suggested that Defendant could help himself by being cooperative. The transcript contains numerous statements by the officers throughout the interview, the effect of which was to say that if Defendant gave a statement they would act on his behalf and had the ability to get the charges reduced. This was more than a mere offer to bring Defendant's cooperation to the attention of the district attorney, which courts have found acceptable. *See State v. Sanders*, 2000-NMSC-032, ¶ 10 (stating that "merely promising to bring a defendant's cooperation to the attention of the prosecutor is not objectionable").

{11}    Additionally, the fact that the officers told Defendant that the final decision on charges was up to the district attorney does not mean that there was no official promise of leniency. *See State v. Benavidez*, 1975-NMCA-013, ¶ 7, 87 N.M. 223, 531 P.2d 957 (stating that an unlawful inducement that renders a confession involuntary need not be made by a person in an actual position of authority, but the situation must be such that the person confessing might reasonably consider the promisor as a person able to afford him aid). The officers' other statements during the interview gave rise to the understanding that, if Defendant made a statement, they had the ability to influence the district attorney, and Defendant would face less time in prison, if any. The reasonableness of this understanding was reinforced by Officer

8

Pena talking about another suspect who "finally remembered" and confessed to burglary, who it "still worked out for" because the confession gave Officer Pena the ability to argue for leniency with the district attorney. *Cf. State v. Barr*, 2009-NMSC-024, ¶¶ 10, 27, 146 N.M. 301, 210 P.3d 198 (finding no implied promise of leniency where the officer told the suspect that he could not offer him a deal but offered to speak to the district attorney on his behalf if he made a statement), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110; *Munoz*, 1990-NMCA-109, ¶ 16 (holding the confession voluntary where the officer responded to the defendant's question by stating that "in his experience, first offenders who cooperated were less likely to go to jail than other defendants"). Under these circumstances, we believe that Defendant could reasonably infer a promise going to the crime confessed based on the officers' statements during the interview. *See Munoz*, 1998-NMSC-048, ¶ 34 (stating that an implied promise of leniency occurs when the accused could reasonably have inferred a promise going to the punishment for the crime to be confessed).

**Voluntariness**

{12} We next turn to the overall question of voluntariness. *See Gutierrez*, 2011-NMSC-024, ¶ 25 (stating that "evidence of an implied promise is only a factor in the totality of the circumstances that courts consider in determining whether a

confession is voluntary"). "On a claim that police coerced a statement, the prosecution bears the burden of proving by a preponderance of the evidence that a defendant's statement was voluntary." *Evans*, 2009-NMSC-027, ¶ 34. "[W]e review the entire record and the circumstances under which the statement or confession was made in order to make an independent determination of whether a defendant's confession was voluntary." *State v. Fekete*, 1995-NMSC-049, ¶ 34, 120 N.M. 290, 901 P.2d 708. "[T]he preponderance of the evidence must establish that the confession was not 'extracted from an accused through fear, coercion, hope of reward, or other improper inducements.'" *State v. Cooper*, 1997-NMSC-058, ¶ 30, 124 N.M. 277, 949 P.2d 660 (quoting *State v. Turnbow*, 1960-NMSC-081, ¶ 41, 67 N.M. 241, 354 P.2d 533).

{13} Again, our review of the transcript of the interview supports the district court's ruling. As the district court found, there were a multitude of implied promises of leniency that started at the outset of the interview and continued throughout, constituting coercive police overreaching. We also find it significant that prior to making both the oral and written statements at issue, Defendant indicated that he was acting in an effort to avoid prison. *See Munoz*, 1998-NMSC-048, ¶ 21 (stating that "[f]or the confession to be involuntary, there must be an 'essential link between coercive activity of the State . . . and a resulting confession by a defendant'"

10

(omission in original)). Before writing the apology letter at the request of the officers, Defendant said: "I'll do anything to avoid jail cuz [sic] I don't wanna [sic] to miss out on my daughter[']s life." Also, while making statements purporting to remember the events of the evening, Defendant repeatedly said that his motivation was to avoid jail: "I'm trying to remember because I really don't want to go to jail or anything else . . . . I'm trying to remember because I wanna [sic] be able to just put this behind me and just move on." "I'm trying to remember but it's . . . like I will do anything it takes to avoid jail time." "I'm just trying to remember so I don't . . . I just . . . you know, I don't wanna [sic] to go to jail." *See State v. Watson*, 1971-NMCA-104, ¶ 11, 82 N.M. 769, 487 P.2d 197 (stating that "[i]f the accused confesses because he was induced by the promise that his punishment will not be so severe as it otherwise might be, the confession is not admissible because it was not voluntary"); *cf. Gutierrez*, 2011-NMSC-024, ¶ 28 (rejecting the argument that a confession was obtained through promises of leniency where the suspect indicated that he did not expect leniency upon confession).

{14} The State points to the fact that Defendant came voluntarily to the police station, was informed that he was free to leave, and did not appear sleepy, nervous, or intoxicated to the officers. The State also notes that the officers reminded Defendant that they personally would not be making the charging decision. However,

11

while these factors may weigh in favor of voluntariness to some extent, based on the totality of the circumstances, we agree with the district court that they are insufficient to outweigh the coercive effect of the numerous implied promises of leniency made to Defendant by the officers throughout the interview. *See Barr*, 2009-NMSC-024, ¶ 24 (stating that a confession is coerced when the defendant's will is overborne and his capacity for self-determination is critically impaired). We therefore agree with the district court the State did not meet its burden to show that the statements were voluntary by a preponderance of the evidence, and we affirm its order suppressing the statements. *See Evans*, 2009-NMSC-027, ¶ 34 (stating that the State's failure to make such a showing requires a ruling that the confession was involuntary as a matter of law).

**CONCLUSION**

{15} The order of the district court is affirmed.

{16} **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

12

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**