This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37980**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CARLOS PACHECO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** The memorandum opinion filed on June 28, 2021, is hereby withdrawn and substituted with this opinion.

**{2}** Defendant Carlos Pacheco appeals his convictions for criminal sexual penetration of a minor (CSPM), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009), and criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). On appeal, Defendant raises numerous arguments related to the

voluntariness of the statements he made during his interrogation, his inability to present a coerced confession defense, and evidentiary issues he contends deprived him of a fair trial. Defendant additionally argues that he received ineffective assistance of counsel and the alleged errors constituted cumulative error. For the reasons that follow, we affirm.

**BACKGROUND**

**{3}** Defendant was charged with four counts each of CSPM and CSCM following allegations raised by his estranged wife, Mayra Guzman, that Defendant had sexually abused Guzman's daughter (Victim). A jury found Defendant guilty of two counts of CSPM and one count of CSCM. This appeal followed. Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve further discussion of specific facts where necessary to our analysis.

**DISCUSSION**

**{4}** Before turning to our discussion of the issues raised in this appeal, we note that a number of Defendant's arguments are undeveloped, unsupported, or generally insufficiently analyzed for the purposes of our review. We will not review undeveloped or unsupported arguments. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"); *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)); *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and . . . , given no cited authority, we assume no such authority exists."). It is not our duty to surmise from inadequate analysis what a party's argument might be, and, indeed, to do so would be counterproductive to our duties as an appellate court. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, [the appellate court] would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error." (citation omitted)). It is, likewise, not our duty to assume how a particular cited authority applies to the facts at hand without adequate analysis from a party. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 5, 433 P.3d 288 ("When a criminal conviction is being challenged, counsel should properly present [the appellate] court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our [R]ules of [A]ppellate [P]rocedure." (internal quotation marks and citation omitted)); *see also* Rule 12-318(A)(4) NMRA (setting out the briefing requirements, including the requirement that appellate briefs cite applicable New Mexico case law).

**{5}** Defendant raises ten issues on appeal, many of which suffer from the defects described above. We additionally remind Defendant that it is normally in a litigant's

interest to limit the number of issues they choose to raise on appeal in order to ensure that the issues presented are ones that can be adequately supported by argument, authority, and factual support in the record, as required by Rule 12-318(A)(4). *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

**I.      The District Court Did Not Err in Determining That Defendant's Interrogation Statements Were Voluntary and in Denying Defendant's Motion to Suppress**

**{6}**      Defendant was interviewed by Detective David Hunter and Deputy Kenneth Funk as part of their investigation of the charges filed against Defendant. At the start of the interrogation, Detective Hunter read Defendant his *Miranda* rights and confirmed that Defendant understood them. Defendant agreed to be interviewed without an attorney present and proceeded to answer Detective Hunter's questions. Defendant denied inappropriately touching Victim but admitted to touching her private area when moving her in bed and bathing her and admitted that on one occasion, when Victim slept between him and Guzman, he placed Victim's hand on his penis believing it was Guzman's hand.

**{7}**      Prior to trial, Defendant filed a motion to suppress the statements he made during the interview, asserting that such statements were obtained in violation of Defendant's rights under the United States Constitution, the New Mexico Constitution, and the Rules of Evidence. Following a hearing and review of the interrogation video, the district court denied Defendant's motion.

**{8}**      Defendant appeals the denial of his motion to suppress, arguing that the incriminating statements made during his interrogation were involuntary and should have been suppressed because (1) Detective Hunter made implied promises of leniency to Defendant; (2) Defendant was particularly susceptible to coercion due to his lack of education; and (3) the interrogation techniques used by Detective Hunter "have been empirically linked to false confessions." We first set out the applicable standard of review and then address each of Defendant's arguments in turn.

**{9}**      "Appellate review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Widmer*, 2020-NMSC-007, ¶ 11, 461 P.3d 881 (internal quotation marks and citation omitted). We review the application of the law de novo but view "the evidence in the light most favorable to the state." *Id.* "The [district] court's denial of a motion to suppress will not be disturbed on appeal if it is supported by substantial evidence, unless it also appears that the determination was incorrectly premised." *Id.* (internal quotation marks and citation omitted). "We review de novo the voluntariness of confessions." *State v. Evans*, 2009-NMSC-027, ¶ 32, 146 N.M. 319, 210 P.3d 216.

**{10}** "Both the Fifth Amendment protection against self-incrimination and the Fourteenth Amendment right to due process negate admissibility of a confession elicited through intimidation, coercion, deception, assurances, or other police misconduct that constitutes overreaching." *State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). "We base our determination of whether a confession is voluntary on whether 'official coercion' has occurred." *Evans*, 2009-NMSC-027, ¶ 33. "Official coercion occurs when a defendant's will has been overborne and his capacity for self-determination has been critically impaired." *Id.* (alteration, internal quotation marks, and citation omitted). In order to conclude that a defendant's confession was involuntary, "[t]here must be an essential link between coercive activity of the [s]tate and a resulting confession by a defendant." *Id.* (omission, internal quotation marks, and citation omitted). When the voluntariness of a defendant's confession is challenged on appeal, we examine the totality of the circumstances to determine whether the confession was made voluntarily. *State v. Bregar*, 2017-NMCA-028, ¶ 5, 390 P.3d 212.

## A. Implied Promises of Leniency

**{11}** Defendant contends that his confession was involuntary because Detective Hunter made implied promises of leniency during the interrogation. Defendant claims Detective Hunter made numerous statements while interrogating him that constituted implied promises of leniency, including (1) Defendant was a "good person"; (2) Detective Hunter could "minimize things" for Defendant; and (3) "good people acknowledge when they've done something wrong."

**{12}** In determining whether Detective Hunter made any implied promises of leniency to Defendant, "we consider whether the accused could reasonably have inferred a promise" to modify or lessen the punishment attached to the crimes for which he was charged. *State v. Baroz*, 2017-NMSC-030, ¶ 36, 404 P.3d 769 (internal quotation marks and citation omitted). "Adjurations to tell the truth do not provide the basis for a ruling that, as a matter of law, the confession was involuntary." *State v. Tindle*, 1986-NMCA-035, ¶ 31, 104 N.M. 195, 718 P.2d 705. Instead, an adjuration to tell the truth "is but one factor for the court to consider in determining whether [the defendant]'s will was overborne." *Id.* Indeed, "threats that merely highlight potential real consequences, or are adjurations to tell the truth, are not characterized as impermissibly coercive." *Baroz*, 2017-NMSC-030, ¶ 36 (internal quotation marks and citation omitted).

**{13}** In *Baroz*, our New Mexico Supreme Court held that the detectives' statements to the defendant during an interrogation constituted implied promises of leniency because the detectives (1) "implied that they would act on [the d]efendant's behalf and help get his charges reduced"; (2) told the defendant that depending on whether they could "get [his] side of the story," the end result of his case "could be a lot different"; and (3) assured the defendant that they worked "hand in hand" with the district court and the prosecutor. *Id.* ¶¶ 39-43. The *Baroz* Court explained that the detectives' statements "gave rise to the understanding that, if [the defendant] made a statement, the detectives had the ability to influence the individuals who would make the decision on a possible

reduction in charges." *Id.* ¶ 43. Similarly, in *State v. Talayumptewa*, 2015-NMCA-008, ¶¶ 6, 8, 341 P.3d 20, this Court held that the officers' repeated statements to the defendant that "they would be meeting with the district attorney . . . and that they had the ability to influence the district attorney with respect to the level of charges [the d]efendant faced" constituted implied promises of leniency. There, this Court reasoned that the officers' statements "constitute[d] implied promises of leniency because their import was that . . . if [the defendant] made certain admissions, officers would intercede with the district attorney on his behalf, and that they had the ability to have charges reduced or not brought at all." *Id.* ¶ 8.

**{14}** Here, by contrast, Detective Hunter's statements did not convey that he had either the ability or the intent to influence the prosecution or the district court to facilitate a lesser punishment in exchange for a confession. While Defendant contends that Detective Hunter implied he could influence the district attorney, our review of the record makes clear that reference to the district attorney was limited to a statement that Detective Hunter would be able to "go to the district attorney . . . and say 'hey, we're getting a little bit different picture now from what [Defendant] says happened and what [Victim] said happened.' " A reference to an ability to *communicate with* the district attorney about potential discrepancies in statements does not rise to the level of implying an ability to *influence* the district attorney's decision making or reduce pending charges. *Compare Baroz*, 2017-NMSC-030, ¶ 43, *and Talayumptewa*, 2015-NMCA-008, ¶ 8, *with State v. Sanders*, 2000-NMSC-032, ¶ 10, 129 N.M. 728, 13 P.3d 460 (clarifying that "merely promising to bring a defendant's cooperation to the attention of the prosecutor is not objectionable").

**{15}** While Defendant argues that Detective Hunter suggested Defendant might only receive counseling as punishment if he confessed, our review of the record indicates Detective Hunter stated that, hypothetically, Defendant might say he "needs some counseling" and Defendant responded, "yeah, counseling would probably help." Despite Defendant's contentions to the contrary, we do not consider Detective Hunter's statements in this regard to be implied promises of leniency because Detective Hunter did not suggest that counseling could serve as an alternative to other punishment contingent upon Defendant's confession. *See State v. Lobato,* 2006-NMCA-051, ¶ 18, 139 N.M. 431, 134 P.3d 122 (finding no implied promise of leniency where the officer said the defendant would get treatment if he confessed but did not imply that the defendant would receive treatment instead of prison time).

**{16}** Lastly, Defendant cites *Baroz* for the proposition that "where the suggestion is that 'it will be better,' or that 'it will be [in the defendant's] best interests' to tell the truth, the accused may have inferred some promise going to the punishment for the crime[,]" 2017-NMSC-030, ¶ 44 (alteration, omission, internal quotation marks, and citation omitted), and refers to Detective Hunter's statements that Defendant was a "good person," that Detective Hunter could "minimiz[e] things" for Defendant, and that "good people acknowledge when they've done something wrong." We are unpersuaded by Defendant's argument in this regard for two reasons. First, as noted, our review of the interrogation reveals that the statements by Detective Hunter were more general than

the statements described in *Baroz* and *Talayumptewa* and did not rise to a level that suggested a capacity to alter a punitive outcome, particularly when considered as part of the broader interview. Second, even assuming that any of Detective Hunter's statements constituted an implied promise of leniency, we would not be compelled to conclude the entire interrogation was involuntary as a result. *See Baroz*, 2017-NMSC-030, ¶ 45 ("[A]n implied promise does not by itself render [a d]efendant's statements involuntary. Rather, it is but one factor in the voluntariness analysis.").

## B.      Susceptibility

**{17}**      Defendant argues that he was particularly susceptible to coercion because he had only a tenth-grade education. "However uneducated or unsophisticated [a d]efendant may be, that alone is insufficient to make his confession involuntary without evidence that the officers took advantage of his lack of sophistication and used it to coerce him into making his incriminating statement." *State v. Barr*, 2009-NMSC-024, ¶ 25, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110. Defendant provides no evidence that Detective Hunter took advantage of Defendant's lack of education in order to coerce him into making a statement. As such, we consider this argument to be undeveloped and consider it no further. *See Fuentes*, 2010-NMCA-027, ¶ 29.

## C.      Interrogation Methods

**{18}**      Defendant claims that Detective Hunter used interrogation methods that are "empirically linked to false confessions." While Defendant cites numerous secondary sources and describes in detail the flaws of the interrogation method referred to as the "Reid Technique," Defendant fails to adequately develop his argument in such a way that could demonstrate how our existing precedent regarding police interrogations is inapplicable or why he believes we should be persuaded by his cited sources. *See id.* ¶ 29; *see also Vigil-Giron*, 2014-NMCA-069, ¶ 60; *Lukens*, 2019-NMSC-002, ¶ 5; Rule 12-318(A)(4). Moreover, to the extent Defendant argues that Detective Hunter's alleged use of the "Reid Technique" was improper in and of itself, we remind Defendant that the *label* applied to police conduct during an interrogation interview does not, alone, render such conduct improper given that we measure whether a person's due process rights were violated by the activities of the police and the totality of the circumstances of the interrogation. *See Gutierrez*, 2011-NMSC-024, ¶¶ 23-24 (explaining that the district court considers a "litany" of factors when analyzing whether the use of a confession violates due process, including factors directed toward both the details of the interrogation and the characteristics of the accused). To that end, we consider, among other things, whether Defendant was advised of his rights, the setting in which the interrogation was conducted, the length of interrogation, whether any physical punishment was employed—such as deprivation of food or sleep—and the nature of the questioning. *See id.* ¶ 23; *State v. Munoz*, 1998-NMSC-048, ¶¶ 35-37, 126 N.M. 535, 972 P.2d 847 (explaining that a 100-minute interrogation was not unreasonably long and stating that "[m]uch longer interrogations have been held to be acceptable without rendering a confession involuntary").

**{19}**     Here, the circumstances surrounding the interrogation do not suggest a coercive atmosphere. Defendant was not handcuffed or otherwise physically restrained during the interrogation. Prior to the interrogation, Detective Hunter read Defendant his *Miranda* warnings, thoroughly explained their impact, and confirmed that Defendant understood them. The interrogation lasted for approximately one hour and forty-five minutes and Defendant was offered a beverage as well as a break. While Detective Hunter's questioning of Defendant was at times pointed and aggressive, such alone does not render a confession involuntary. *See Gutierrez*, 2011-NMSC-024, ¶ 27 (explaining that even where a detective "undoubtedly employed aggressive tactics, nothing [the detective] said could have reasonably led [the defendant] to believe that he had been promised leniency . . . in return for his confession[,]" and stating that it was far more likely that the defendant "weighed and balanced competing considerations and then made an autonomous decision to confess"). Indeed, our review of the interrogation reveals nothing that suggests, under the totality of the circumstances, Defendant's will was overborne, *see id.* ¶¶ 22-23, and thus we hold that the district court did not err in determining Defendant's interrogation statements to be voluntary or in denying Defendant's motion to suppress.

## II.     Defendant Has Not Established That He Was Denied the Right to Present a Complete Defense

**{20}**     At trial, the State introduced excerpts of Defendant's interview with Detective Hunter and Deputy Funk in which Defendant admitted that he touched Victim "between her legs" when he moved her in bed and gave her a shower while wearing his boxers, and that he awoke in the middle of the night while Victim was sleeping between him and Guzman and discovered that Victim's hand was on his penis believing it was Guzman's. Defendant requested that the entire interrogation video be shown to the jury—in addition to the State's admitted exhibits—in order to provide context, or, alternatively, that Defendant be permitted to introduce additional, unidentified excerpts of the video. The State responded that the rest of the interrogation video contained hearsay, and Defendant suggested that any hearsay in the video could be handled "piecemeal." The district court ruled that it had already denied Defendant's motion to suppress and because, in so doing, it had not found anything "legally improper" within the interrogation, "attempts to undermine [the interrogation] by use of hearsay would be improper," and, as a result, the court was "not going to admit the full airing of the [interrogation]."

**{21}**     Defendant now argues that he was precluded from presenting a coerced confession defense because the district court (1) denied Defendant's request to admit the complete interrogation video; (2) failed to instruct the jury as to the voluntariness of Defendant's statements made during the course of his interrogation; and (3) declined to order the appointment of a defense expert witness to testify on Defendant's behalf regarding the nature of coerced confessions. We address each issue in turn.

## A. The District Court Did Not Err in Denying Defendant's Request to Admit the Complete Interrogation Video

**{22}** Defendant contends that the district court erred in allowing the State to admit selected portions of the interrogation video while refusing to allow Defendant to admit either the entire interrogation video or, alternatively, additional, unidentified excerpts.[1] Specifically, Defendant argues that (1) the district court should have allowed additional portions of the video to be admitted under the rule of completeness, and (2) to the extent the district court's denial of Defendant's request was responsive to the State's objection to hearsay, any hearsay contained in the video was either admissible to "provide context" for Defendant's statements and "hearsay evidence is admissible through the [r]ule of [c]ompleteness."[2]

**{23}** We review evidentiary decisions by the district court for abuse of discretion. *State v. Sanchez*, 2008-NMSC-066, ¶ 12, 145 N.M. 311, 198 P.3d 337. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). In order to successfully claim the district court abused its discretion, a criminal defendant "must establish not only an abuse of discretion, but also that the abuse was to the injury of the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135 (internal quotation marks and citation omitted).

**{24}** Defendant contends that the rule of completeness should have compelled admission of the entire interrogation video. Rule 11-106 NMRA states that if one party introduces "part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded

---

[1]Because Defendant neither below nor on appeal identifies the additional excerpts of the interrogation video he sought to admit, we consider only his contention that the district court erred in denying the admission of the complete interrogation video.

[2]Despite our conclusion that the district court did not err in denying Defendant's request to admit the complete interrogation video, we note that the district court's ruling on the issue below was not in accordance with either the applicable UJI or existing case law. The district court ruled that because the voluntariness of Defendant's statements had been determined proper as a matter of law, the issue could not be presented to the jury. In New Mexico, a question regarding the voluntariness of a defendant's statements is preliminarily determined by the judge and, if the judge determines the statement is voluntary, the defendant is subsequently entitled to have the issue decided by a jury. *See* UJI 14-5040 NMRA use note 1 ("This instruction must be used when the court has made a determination that a statement by the defendant is voluntary and then submits it to the jury for consideration."); *see also, e.g.*, *State v. Armstrong*, 1971-NMSC-031, ¶ 3, 82 N.M. 358, 482 P.2d 61 (observing that the district court merely performs a "preliminary duty of inquiring into the voluntariness of the confession prior to submitting it to the jury" with proper instructions). The district court, therefore, erred in disallowing the jury to consider the question of the voluntariness of Defendant's interrogation statements. However, for the reasons set forth in this section of our opinion, we nonetheless affirm the district court's denial of Defendant's request to admit the entire interrogation video. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the appellate court will affirm the district court's decision if it is right for any reason, so long as it is not unfair to the appellant).

statement—that in fairness ought to be considered at the same time." "The primary purpose behind the rule of completeness is to eliminate misleading or deceptive impressions created by creative excerpting." *State v. Garcia*, 2013-NMCA-064, ¶ 11, 302 P.3d 111 (internal quotation marks and citation omitted); *see also Barr*, 2009-NMSC-024, ¶ 35 ("Rule 11-106 . . . operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement." (internal quotation marks and citation omitted)). "Rule 11-106 does not mandate that a whole document automatically becomes competent upon introduction of a portion thereof." *Barr*, 2009-NMSC-024, ¶ 36. Rather, "[t]he rule applies *only* to other parts of a [recorded statement] that are relevant *and* that illuminate the parts of the [recorded statement] already admitted." *State v. Sanders*, 1994-NMSC-043, ¶ 19, 117 N.M. 452, 872 P.2d 870 (emphases added). It thus is incumbent upon the party seeking admission of additional portions of a document or statement to "show that the evidence is relevant to the issue in dispute and qualifies or explains the subject matter of the portion of the writing already admitted." *Barr*, 2009-NMSC-024, ¶ 36.

**{25}** Here, Defendant has failed to show that "the *entire* [interrogation recording] was relevant to the jury's understanding of his statements," as required for admission under the rule of completeness. *See Sanders*, 1994-NMSC-043, ¶ 20 (emphasis added). While Defendant acknowledges that he sought the admission of "the entirety of . . . [D]efendant's interview[,]" Defendant does not articulate how the entirety of the interrogation would be relevant to his theory that "he was coerced into the confession." Indeed, Defendant's assertions in this regard are insufficient under our case law. *See Barr*, 2009-NMSC-024, ¶ 45 (holding that the district court erred in admitting entire videotaped statement under the rule of completeness because the state merely sought the entirety of the statement admitted under that rule and failed to "specify which portions were relevant and qualified or explained any inconsistencies that it alleged were taken out of context"); *see also Sanders*, 1994-NMSC-043, ¶ 20 ("Because [the defendant] made no showing that the entire document was relevant to the jury's understanding of his statements, the [district] court did not abuse its discretion in refusing to admit it under Rule [11-]106."). Because Defendant has failed to meet his burden of proving that the rule of completeness compelled admission of the full interrogation recording, we hold that the district court did not abuse its discretion in denying Defendant's request to admit the complete interrogation video.

## B. The District Court's Failure to Instruct the Jury on Voluntariness Constituted Harmless Error

**{26}** Defendant argues that the district court erred in failing to instruct the jury on the voluntariness of Defendant's interrogation statements. The parties dispute whether Defendant adequately preserved this instructional error. We need not resolve the preservation question because, as explained below, even if Defendant's claimed instructional error were preserved, it provides no basis for reversal in this case.

**{27}** The use notes to UJI 14-5040 provide that the instruction, which directs a jury to determine whether a defendant's statement was given voluntarily before using it for any purpose, "must be used when the court has made a determination that a statement by the defendant is voluntary and then submits it to the jury for consideration." Indeed, we have characterized the instruction as "mandatory, not permissive." *State v. Zamora*, 1978-NMCA-017, ¶ 7, 91 N.M. 470, 575 P.2d 1355.

**{28}** Despite the instruction's mandatory nature, however, the parties, relying on older case law from this Court and our Supreme Court, both agree that the failure to instruct the jury on voluntariness is rendered harmless if the defendant substantially admits the facts contained in his interrogation statements through his testimony at trial. *State v. Barnett*, 1973-NMSC-056, ¶¶ 16-17, 85 N.M. 301, 512 P.2d 61; *see Zamora*, 1978-NMCA-017, ¶ 27 (stating that the district court's error in failing to instruct the jury on voluntariness was harmless because the issue of "voluntariness disappeared when [the] defendant testified to the same facts given to the police officers"). Because Defendant substantially admitted the facts contained in the video interrogation during his trial testimony, we hold that the district court's failure to instruct the jury constituted harmless error.

## C. The District Court Did Not Err in Declining to Order the Appointment of a Defense Expert Witness

**{29}** Defendant argues the district court erred in declining to order an expert witness to testify on Defendant's behalf. At the hearing on Defendant's motion to suppress, Defendant requested that the district court order the appointment of an expert witness to testify on behalf of Defendant regarding interrogation methods. Defendant claimed he was indigent despite being represented by private counsel, although—as the district court noted prior to denying Defendant's request—an affidavit of indigency was never filed and Defendant's indigency was never established. Defendant refers to "internal policy" of the Law Offices of the Public Defender (LOPD)—without providing any citation to or proof of such policy—to assert that "LOPD will pay expert witness fees for an indigent defendant represented by private counsel if the defendant obtains a court order and submits an affidavit from counsel attesting to the 'critical need' for the expert witness." Defendant asserts that the LOPD policy adopts *State v. Brown*, 2006-NMSC-023, ¶ 25, 139 N.M. 466, 134 P.3d 753, holding that "indigent defendants represented by [private] pro bono, contract, or [LOPD] counsel should have equal access to expert witness funding provided that the expert witness meets all of the standards promulgated by [LOPD]." (Emphases omitted.) Defendant appears to have been represented by *paid* private counsel, and Defendant does not argue on appeal that Defendant's private counsel represented him in a pro bono capacity. Nor does Defendant explain how LOPD's policy expands the holding in *Brown* to include paid private counsel, and we therefore remain unpersuaded by Defendant's argument. *See Chan*, 2011-NMCA-072, ¶ 9; *see also Vigil-Giron*, 2014-NMCA-069, ¶ 60.

**{30}** Defendant also contends that the district court should not have required an affidavit as to Defendant's indigency because prior to the hearing on the motion to

suppress, Defendant had "already qualified for the services of LOPD . . . , which would have necessarily required a finding of indigency[,]" and an affidavit was therefore unnecessary. While true that Defendant appears to have previously qualified for LOPD services, Defendant provides no support for his contention that the district court should have waived the affidavit requirement in considering Defendant's request for appointment of an expert witness. Without this, we cannot assign error to the district court's decision. *See Chan*, 2011-NMCA-072, ¶ 9; *see also Vigil-Giron*, 2014-NMCA-069, ¶ 60. We therefore hold that the district court did not err in denying Defendant's request for an order appointing an expert witness to testify on his behalf.

### III. Defendant's Unpreserved Claims of Error Did Not Result in Either Plain or Fundamental Error

**{31}** Defendant argues that numerous unpreserved evidentiary errors improperly bolstered Victim's testimony. Specifically, Defendant contends that (1) the State's expert witness improperly "vouched for the truth of" Victim's allegations; (2) law enforcement witnesses' testimony was improper; and (3) the State improperly introduced irrelevant and prejudicial evidence to support its case against Defendant. Defendant further contends that trial counsel for the State engaged in prosecutorial misconduct during cross-examination of Defendant and closing argument. We review unpreserved evidentiary matters for plain error, *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056, and unpreserved claims of prosecutorial misconduct for fundamental error, *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814.

**{32}** The doctrine of plain error, arising from our Rules of Evidence, applies specifically to evidentiary matters and permits a court to "take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved." Rule 11-103(E) NMRA. "To find plain error, the [c]ourt must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted). "[I]n determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *Id.* (omission, internal quotation marks, and citation omitted).

### A. Expert Testimony

**{33}** Defendant argues that Dr. Jana Williams, a pediatrician who testified for the State, improperly testified as to Victim's credibility. Specifically, Defendant contends that Dr. Williams improperly testified that "(1) the jury should not 'rely too heavily on the medical exam in diagnosing sexual abuse,' (2) 'the child's disclosure . . . is the biggest support for whether abuse occurred,' (3) children who have not been abused will not 'be able to describe a sexual act that has not happened to them,' and (4) . . . a child who has not experienced sexual abuse [would] not be able to describe semen."

**{34}** Our case law is explicit in its prohibition against an expert witness' direct testimony regarding the credibility or truthfulness of an alleged victim of sexual abuse.

*State v. Alberico*, 1993-NMSC-047, ¶ 85, 116 N.M. 156, 861 P.2d 192. Our own review of the record in this case, however, does not support Defendant's contention that Dr. Williams violated that prohibition. Rather, Dr. Williams' testimony regarding Victim was well within the permitted scope of expert testimony. We explain.

**{35}** First, though, we note that Defendant's briefing on this issue fails to consider the full context of the specific statements in Dr. Williams' testimony with which he takes issue. For example, while Defendant argues that Dr. Williams improperly testified that the jury should not "rely too heavily on the medical exam in diagnosing sexual abuse," our own review of the record makes clear that Dr. Williams' statements in this regard referred to her broader testimony that certain research she relies on "indicate[s] that medical, social, and legal professionals" often "rely too heavily on the medical exam in diagnosing child sexual abuse," and that some studies indicate a child's disclosure is "the biggest support for whether abuse occurred" because, typically, a child who has never been abused will be unable to describe a sexual act that has not happened to them.

**{36}** Under Rule 11-702 NMRA, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." "Expert witnesses function to assist the trier of fact in understanding evidence and the factual issues in a case." *State v. Consaul*, 2014-NMSC-030, ¶ 56, 332 P.3d 850. "Trial courts have broad discretion in admitting expert testimony as long as the expert (1) is qualified, (2) provides testimony that will assist the trier of fact, and (3) provides testimony regarding scientific, technical, or other specialized knowledge with a reliable basis." *Id.* (internal quotation marks and citation omitted). Dr. Williams' testimony with which Defendant takes issue merely explained relevant research in her field, which could reasonably assist the jury in understanding Victim's testimony. What is more, nothing about Dr. Williams' testimony "create[s] grave doubts concerning the validity of the verdict," *see Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted), and we therefore hold that such testimony did not result in plain error.

## B. Alleged Improper Hearsay and Opinion Evidence Regarding Victim's Statements

**{37}** Defendant argues that the district court erred in allowing testimony regarding Victim's safe house interviews. Defendant contends this testimony was implied hearsay, as the witnesses' statements "had no probative effect other than to prove the truth of the matter asserted and to improperly bolster [Victim's] testimony with prior consistent statements." We disagree with Defendant's characterization of the testimony in question, which does not reference Victim's statements with any specificity or identifiable information, but rather confirms consistency between Victim's statements and descriptions of how a deputy and a forensic investigator ascertained information during the investigation process.

**{38}** Defendant cites federal case law to support his argument in this regard but fails to explain why our own case law on the rule against hearsay is inadequate or inapplicable in this case. Our own rules of evidence provide that hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Rule 11-801(C) NMRA. Under Rule 11-801(C), testimony must contain an out-of-court statement in order to be considered hearsay. The testimony Defendant alleges was implied hearsay contained no actual statements made by Victim as the out-of-court declarant. Without argument or explanation from Defendant as to how the testimony at issue should be considered hearsay, we are unpersuaded by Defendant's contention in this regard.

## C.    Alleged Irrelevant and Prejudicial Evidence

**{39}** Defendant claims that the State repeatedly misrepresented Defendant's interrogation statements, specifically referring to the State's focus on Defendant's admissions regarding touching Victim while bathing her. Defendant argues that such evidence was irrelevant but does not provide any analysis to support his contentions. Similarly, Defendant contends that the State's evidence regarding Defendant bathing Victim was unfairly prejudicial but does so without explanation or analysis. Defendant argues as well that the State's characterization of Defendant as a "deadbeat" parent was unfairly prejudicial but does not develop this argument any further than merely asserting it. It is not enough for a party to claim evidence was irrelevant and unfairly prejudicial without providing at least some analysis in support of their claim beyond merely stating the controlling rules of evidence and citing a single case without analysis or application. *See Lukens*, 2019-NMSC-002, ¶ 5; *see also* Rule 12-318(A)(4). We consider Defendant's arguments in this regard to be undeveloped and decline to consider them further. *See Fuentes*, 2010-NMCA-027, ¶ 29.

## D.    Alleged Prosecutorial Misconduct

**{40}** Defendant argues the State's prosecutor misrepresented Defendant's prior statements during cross-examination, misrepresented Dr. Williams' testimony, and improperly appealed to the jurors' emotions during closing argument. Defendant contends that, together, the prosecutor's actions constituted prosecutorial misconduct, deprived Defendant of a fair trial, and were unfairly prejudicial such that retrial should be barred.

**{41}** Despite Defendant's assertion that we should review this issue for plain error, we review this unpreserved argument for fundamental error. *See State v. Wildgrube*, 2003-NMCA-108, ¶ 20, 134 N.M. 262, 75 P.3d 862 (stating that when a prosecutorial misconduct "claim has not been properly preserved by a specific and timely objection at trial, we have the discretion to review the claim on appeal for fundamental error"); *see also Rojo*, 1999-NMSC-001, ¶ 55 (explaining that the "[f]ailure to make a timely objection to alleged improper argument bars review on appeal, unless the impropriety constitutes fundamental error[,]" which can arise when a "prosecutor engages in

misconduct that compromises the defendant's right to a fair trial" (internal quotation marks and citation omitted)). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Trujillo*, 2002-NMSC-005, ¶ 52 (internal quotation marks and citation omitted). Defendant has not met his burden on appeal.

**{42}** Defendant contends that the prosecutor misquoted Defendant numerous times during cross-examination with the intention of "appealing to the jury's passions." Defendant does not explain how the prosecutor's questioning of Defendant appealed to the jury's passions, merely asserting as much in a parenthetical citation. *See Lukens*, 2019-NMSC-002, ¶ 5; *see also* Rule 12-318(A)(4). Moreover, to the extent Defendant argues the prosecutor's questions to Defendant implicated facts not in the record, we disagree and note that the prosecutor's question during cross-examination related to Defendant's statements during his interrogation.

**{43}** Defendant contends as well that during closing argument, the prosecutor misrepresented Dr. Williams' testimony by arguing there was affirmative evidence of abuse, a statement which Defendant argues is in conflict with Dr. Williams' testimony that Victim's physical exam was "normal." During closing argument, the prosecutor referred to "physical evidence of anal penetration" of Victim, presumably in reference to Dr. Williams' testimony that Victim's relaxed sphincter could be consistent with repeated anal penetration.

**{44}** "During closing argument, both the prosecution and defense are permitted wide latitude," so long as counsel's remarks are "based upon the evidence or [are] in response to the defendant's argument." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. "Where it is alleged that improper prosecutorial comments have been made in closing argument, [we ask] whether the comments deprive the defendant of a fair trial." *Id.* (internal quotation marks and citation omitted). Within our inquiry, however, "[t]he general rule is that an isolated comment made during closing argument is not sufficient to warrant reversal." *Id.* (internal quotation marks and citation omitted). Here, the prosecutor's closing argument referring to Dr. Williams' testimony was based upon testimonial evidence and amounted to approximately one minute of argument. Moreover, the jury was instructed that the arguments of counsel were not to be considered as evidence.

**{45}** Defendant similarly contends that the prosecutor improperly appealed to the jury's emotions during closing argument by "implying that a guilty verdict would assuage [Victim's] pain." Defendant does not specify how the prosecutor's statement "inflamed the passions and prejudices of the jury," and we therefore consider this argument undeveloped. *See Fuentes*, 2010-NMCA-027, ¶ 29. Additionally, we reiterate that—even if this argument were adequately developed—an isolated statement made during closing argument, even if improper, generally will not result in reversal. *See Smith*, 2001-NMSC-004, ¶ 38.

## IV. Defendant Has Not Established a Prima Facie Case of Ineffective Assistance of Counsel

**{46}** Defendant argues he was denied effective assistance of counsel because Defendant's trial counsel failed to (1) prepare Defendant to testify during cross-examination regarding his interrogation statements, (2) present exculpatory evidence, (3) object during trial, (4) present expert testimony on Defendant's behalf, (5) "properly" cross-examine Dr. Williams, (6) present a coerced confession defense, (7) correct the district court regarding the law of the case doctrine, (8) request a voluntariness instruction, and (9) make any closing argument related to Defendant's interrogation statements.

**{47}** "Habeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (alteration, internal quotation marks, and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.*

**{48}** To present a prima facie case of ineffective assistance of counsel, "a defendant must establish that (1) counsel's performance was deficient, *and* (2) such deficiency resulted in prejudice against the defendant." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (emphasis added). Defense counsel's performance is deficient if his or her conduct falls below that of a reasonably competent attorney. *Grogan*, 2007-NMSC-039, ¶ 11. "[J]udicial review of the effectiveness of counsel's performance must be highly deferential[.]" *Lytle v. Jordan*, 2001-NMSC-016, ¶ 50, 130 N.M. 198, 22 P.3d 666. "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted).

**{49}** Here, Defendant has failed to present a prima facie case of ineffective assistance of counsel for any of his underlying claims because none are sufficiently developed in the record. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" (internal quotation marks and citation omitted)). We reiterate that ineffective assistance of counsel claims are more effectively pursued through a habeas corpus proceeding, *Grogan*, 2007-NMSC-039, ¶ 9, and therefore decline to consider this issue further.

## V. No Cumulative Error Occurred

**{50}** We are unpersuaded by Defendant's argument that he was deprived a fair trial due to the cumulative effect of the errors he alleges occurred in the district court. Although we have recognized there was jury instruction error in this case, it presented no ground for reversal, and Defendant's single paragraph argument on cumulative error is unconvincing. *See Fuentes*, 2010-NMCA-027, ¶ 29; *see also State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("The doctrine of cumulative error is to be strictly applied, and cannot be invoked if the record as a whole demonstrates that the defendant received a fair trial." (alterations, omission, internal quotation marks, and citation omitted)).

## CONCLUSION

**{51}** For the reasons stated above, we affirm.

**{52} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**